PINNEY, CASSE & LACKEY CO. v. UNITED STATES.

(Circuit Court, S. D. New York. December 28, 1899.)

No. 2,780.

Customs Duties—Classification—Scotch Hollands.

Cotton goods used for window shades, known as "Scotch Hollands" or "King's Hollands," stiffened with 20 per cent. of starch, are dutiable under paragraphs 306, 307, and 308 of the tariff act of 1897, being the countable cotton clauses, and not under paragraph 311, as "cotton cloth, filled."

Appeal by the importers from a decision of the board of general appraisers, which affirmed the classification by the collector of the importations in question.

W. Wickham Smith, for importers.
D. Frank Lloyd, Asst. U. S. Atty.

TOWNSEND, District Judge (orally). The goods in question are commonly known as "Scotch Hollands" or "King's Hollands," and are used for window shades. Such goods prior to the passage of the

tariff act of 1897 had been classified as "cotton cloths," under the countable cotton clauses. The goods in question were classified for duty, under paragraph 311 of the act of 1897, as "cotton cloth, filled or coated," at 3 cents per square yard, and 20 per cent. ad valorem. The importers protested, claiming that they should have been classified under paragraphs 306, 307, and 308, being the countable cotton clauses of said act. These goods are stiffened with about 20 per cent. of starch. They have also been subjected to a process of beetling, which consists in pounding the cloth in order to give a moire or polished finish thereto, and the effect of which is to flatten the threads, or to bring them closer together. It is conceded that the goods are not coated. The sole question is whether they are cotton cloth, filled. A majority of the board of general appraisers overruled the protest of the importers, but the only member of the board who saw and heard all the witnesses delivered a dissenting opinion in favor of the importers. It is conceded that the provision for filled goods is the more specific one. The testimony as to the meaning of the words "fill," "filling," and "filled" is very conflicting. In England the term "filled" is applied to fabrics which have been weighted artificially by the introduction of glue or of clay, or other inorganic materials, in order to give them a factitious solidity. Some of the witnesses testify that said term has the same meaning in this country. Others testify that the question whether goods are filled or not depends either on the purposes to which the goods are to be devoted, or the percentage of starch, or the character of the material used, while others say that no one of these definitions can be applied, and that the question whether goods are filled or not can only be determined by inspection of the material. In view of these conflicting uses, it is evident that the term "filled" has no sufficiently fixed, uniform, universal meaning in trade or commerce. to establish a trade designation. It is admitted that these goods contain no extraneous material except starch. The strength of the government's contention is that starch alone is sufficient to constitute a filling, when used in such quantities as to practically close the pores. But the contradictions and inconsistencies in the testimony of the witnesses for the government concerning the meaning of the term, the standard of determination, the material used, the percentage of starch necessary to constitute such a filling, and as to variations in percentage according to the relative coarseness or fineness of the cotton, and their admission that the term is an elastic one, leave the government's side of this contention so uncertain that it would be impossible to so determine the meaning of the term as to formulate a definite construction, or to establish a standard by which it could be tested. No definition has been suggested which would furnish a reasonable and practical construction, capable of ordinary application in the business of the custom house. One of the witnesses for the importers, McNab, introduced on the hearing one piece of hollands which had been beetled, but not starched. It showed that this beetling process alone had made the interstices between the threads as close as in the goods in question. One of the witnesses for the government introduced an order for goods to be "well filled

up," and testified that in accordance with said order he filled said goods. Upon cross-examination he was asked to produce, and did produce, a sample of said goods, when it appeared that they were neither filled, within the definition of "being occupied to their full capacity," or of "practically closing up the interstices." The goods in question are not filled, in fact, within the foregoing ordinary meanings of that term, or within the definition "to put, pack, or pour into until no more can go in," for it is not contended that these goods have been filled to their full capacity with starch, nor so far filled as to entirely close the interstices; or in the technical sense, as shown by the books treating of this subject, in which it is generally stated or assumed that, in order to constitute a filling, there must be some inorganic material or material other than starch. The testimony of the witnesses for the government conflicts as to whether the method pursued for starching is the same as that used for filling. The uncontradicted testimony shows that all finished goods are starched with a greater or less percentage of starch, and that the amount used is modified according to the purposes for which the article is to be adapted. In view of all the foregoing considerations, it must be held that the goods in question are not filled, and therefore the decision of the board of general appraisers is reversed.