UNITED STATES v. PINNEY, CASSE & LACKEY CO.

(Circuit Court of Appeals, Second Circuit.   December 6, 1900.)

No. 22.

CUSTOMS DUTIES—CLASSIFICATION—COTTON CLOTH, FILLED.
   The term "filled," as used in paragraph 311 of the tariff act of 1897, fixing the duty on "cotton cloth, filled or coated," which is a manufacturing, rather than a commercial, term, is not confined in its meaning to such goods as have been weighted with a foreign substance—usually an inorganic material—to give them a factitious solidity, in which sense it was formerly used in England, but the filling may be starch alone.   But, whatever substance is used, to constitute "cotton cloth, filled," within the meaning of that section, such quantity must be used as to substantially close the interstices in the cloth, and make a plain surface, and the samples of imported "Scotch Hollands," or "King's Hollands," used for window shades, stiffened with 20 per cent. in weight of starch, but which does not substantially close the interstices, are not dutiable under such paragraph, but under paragraphs 304–309, being the countable cotton clauses.

Appeal from the Circuit Court of the United States for the Southern District of New York.

D. Frank Lloyd, Asst. U. S. Dist. Atty.
W. Wickham Smith, for appellee.

Before LACOMBE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge.   This is an appeal from the decision of the circuit court of the United States for the Southern district of New York, which reversed the decision of the board of United States general appraisers, which had sustained the action of the collector. 99 Fed. 720.  The goods in controversy are known as "Scotch Hollands," or "John King & Son's Hollands," which are made and used for window shades in houses, and are manufactured or prepared from cotton cloth which had been woven in the ordinary way.   Prior to the tariff act of 1897, this class of goods had been classified for tariff purposes as cotton cloth, bleached or colored, under the clauses of the tariff acts known as "countable clauses," and which, in the act of 1897, are contained in paragraphs 304 to 309, and which provide a rate of duty according to the number of threads to the square inch and the weight and value per square yard.   Paragraph 311 of the act of 1897 contained a new provision, which was "cotton cloth, filled or coated, three cents per square yard and twenty per centum ad valorem."   Against the protest of the importers, the collector classified the goods in question under this paragraph as filled cotton cloth, and his decision was sustained by the majority of the board of general appraisers.   The point in controversy is whether the importations in question, which are the product of John King & Son's well-known factory in Scotland, seven-eighths of their goods coming to the United States, are filled cotton or merely starched cotton.   It is

to be premised that the term "filled" is not, strictly speaking, a commercial term; that is to say, no goods are ever bought or sold or inquired about as filled goods. The term is a technical one, used by the manufacturers, and relates to the process of manufacture, and therefore is also employed, to a certain extent, by the commission merchant, or by the importer, who is naturally familiar with the method of manufacture by which the goods which he sells are presented to the public. To a limited extent it is a term used in commerce, but its meaning depends upon its signification among the manufacturers to whose business it relates. Formerly, in England, the term "filled cotton goods" was synonymous with "weighted goods," and meant that the interstices of the fabric were loaded or weighted with foreign substances, among which inorganic substances, like china clay, chalk, or Glauber's salts were used; and that, although starch was used, some other material, like clay, or perhaps glue or glucose, must be used also. This weighting was for the purpose of giving to the goods "a factitious solidity," and thus of deceiving the inconsiderate purchaser. The following extracts from Depierre on "The Finishing of Cotton Goods" illustrate the method and the substances which were used in this class of filling:

"Afterwards come the filled or weighted finishings, where considerable quantities of earthy matters are incorporated, either on one side or both sides of the fabric, by means of the back-starching machine, or the ordinary and friction starch mangles."

"The principal qualities that a body destined to give weight in finishing must possess are a fine white colour, in a tenuous powder, of a moderate price, insoluble in water, and in the ordinary agents used in finishing it must not be influenced by the emanations generally.found in air, nor must it be poisonous. The bodies possessing these qualities are china clay, whiting, or chalk, gypsum, talc, steatite, and kaolin. These substances are those most generally employed."

The interstices of cotton cloth are also necessarily filled in order to finish or prepare the goods for the purposes for which they are designed, and, when thus filled, the completed goods contain no element of deception.

The protesting importer insists that filling cotton goods, whatever may be the object of the process, necessarily consists in the use, with or without starch, of some one of the inorganic materials which have been or can be named, or of glue; that filling, in the proper sense of the term, by the use of starch alone, is either impracticable, or is not within the meaning of the term; and that the use of starch alone is simply for the purpose of starching or stiffening the fiber of the goods. The importer's definition of filling is satisfied if the goods contain in addition to starch an appreciable quantity of inorganic material. It is a conceded fact in this case that, so far as an introduction of foreign substances, other than coloring matter, into the interstices of the cloth is concerned, starch only was used, which constituted about 20 per cent. of the weight of the completed fabric. The ordinary process used in the manufacture of window shades, called "beetling," was also used, which consists "in pounding the cloth in order to give a moire or polished finish thereto, and the effect of which is to flatten the threads, or to bring them closer to-

·gether,"·. The theory of the government is that at the date of the act ·of·1897, and for many years prior thereto, in this country, the inter-·stices·of·cotton goods which were finished for a great variety of pur-·poses, of which window shades, vellums, book cloths, trunk linings, ·shoe· linings,· and cheap shirtings· are examples, were filled with ·.starch only, and that filling the interstices by starch alone for many ·of· the various purposes for which cotton goods are manufactured ·was·and had· been a well-understood process of manufacture,· and ·that the interstices of the goods in question were filled. The testi-·moby upon the questions of fact between the parties comes from an ·exceptionally intelligent and experienced class of witnesses, who are ·about equally divided numerically. · Upon the point maintained by ·the· protesting importers,—that filling the interstices of cotton cloth ·with starch alone ·cannot be done, and was not commonly practiced ·in· this country in and before 1897, the importers must fail, because ·it is a·fact that in this country cotton goods in the process of man-·ufacture into window shades have been for many years, by well-·known·and extensive manufacturers, filled with starch alone. The ·process·was for the purpose of making a plain surface, and thereby an acceptable window shade. In like manner the interstices of cot-·ton cloth for bookbinders' purposes and for tracing cloths are closed ·with starch alone, ·so as to put the cloth into·proper condition. An ·alleged·difficulty with the case of the government consists in the fact ·that the boundary line between starching and filling cannot be clear-·ly·defined. Starching consists in the use of a solution, and in many ·cases a. weak solution, of starch, which is incorporated into the ·fiber of the threads to· give stiffness or body to· the cloth; while ·filling·is the substantial closing of the interstices, and thus the crea-·tion· of a permanent plain surface. This is done by running the cloth, which has been placed in a shallow box filled with the proper ·solution of starch, through a series of rolls, whereby the starch or ·filling·matter is squeezed into the mesh or pores of the cloth. The practical difficulty in defining the line of demarkation between the two processes arises from the business system of finishing cotton ·goods. The manufacturer of the cotton cloth sends his brown cloth ·to· a bleaching, dyeing, and finishing company with directions to ·finish·in a certain way,—perhaps in accordance with a sample,—or to ·fill and finish for a certain purpose. The term "filling" has thus ·come to ·be an elastic term, and in business· directions is often used ·loosely; and ·instructs the finisher to fill the particular goods so far ·as needful for the particular purpose for which they are to be used, ·or to fill in accordance with the style of cloth which is to be filled. ·Thus, a window shade demands a· more complete and uniform plain ·surface, with pin holes: substantially closed, than do linings for ·trunks or satchels. Nevertheless, the term means, when used with ·precision, the substantial closing of·the interstices of cloth, which ·is the intended result; and this meaning of the term· and intent of ·the process is recognized by some of the manufacturers of large ex-·perience who·are witnesses for the United States. As thus defined, ·there is no real difficulty in ascertaining, either for purposes of the ·tariff·or for any·other purpose, when a window shade is filled. That

inspection or examination by unaided eyesight, to which persons of ordinary powers of observation are accustomed, will enable either the purchaser or the appraiser to know whether or not the interstices of a piece of cotton cloth have been substantially closed; and, so far as window shades are concerned, the opportunities for the comparison of a piece of imported goods with samples in which the apertures have been actually closed are very abundant. An inspection of the samples of the imported goods which are in evidence plainly shows that they have not been filled. Filling has been partially effected, but they have not been filled in any proper meaning of the word, and this conclusion is confirmed by the opinion of at least two of the manufacturers who were called by the government, one of whom says, "The interstices are not filled up entirely." Another says that the interstices have been closed "in a measure," and that these goods were not properly finished. Another says that the samples are the least filled, and are two of the poorest pieces of King's Hollands which he ever saw. A manufacturer and commission merchant of experience, who was called by the importers, truly says in regard to the goods in question, "The pin holes or interstices are somewhat closed." The witnesses for the government who speak of these goods as "filled" use the word in the elastic sense of which we have spoken, and do not mean either that they are absolutely or substantially closed. As a matter of course, the result which we have reached does not imply that none of the Scotch Hollands of John King & Son are filled goods. The question whether the particular importations were a fair sample of the manufacturers' uniform product was not in issue. We concur with the circuit court in the opinion that the importations in question were not filled in fact, and are also of opinion that they were not filled in accordance with any definition of the term which is not admittedly inexact. The decision of the circuit court is affirmed.