(C.D. 4736)

BRUCE DUNCAN CO., INC. *v.* UNITED STATES

Court No. 73-8-02401

(Decided March 2, 1978)

*Tompkins & Davidson* (*Herbert T. Posner, Steven S. Weiser* and *Harvey A. Isaacs* of counsel) for the plaintiff.

*Barbara Allen Babcock,* Assistant Attorney General (*Joseph I. Liebman,* trial attorney), for the defendant.

LANDIS, Judge:   This action involves merchandise imported in 1971 from West Germany, into the port of Chicago, Illinois and described

on the customs invoice as "FUSIBLE INTERLINING CLOTH . . . coated with polyamide pin points."

The merchandise had been originally classified by Customs under TSUS item 326.12, as modified by Presidential Proclamation 3822, as "Woven fabrics, in chief value, but not wholly of cotton: containing (in addition to cotton) silk or man-made fibers, or both, but not containing other fibers: not fancy or figured; not bleached and not colored, at the rate of 10.49% ad valorem." However, at trial the defendant conceded the merchandise was in fact colored and without objection filed an amended answer admitting "the merchandise was in fact colored, and [stating it] should have been classified under item 328.12, TSUS, with duty assessed at the rate of 14.09 per centum ad valorem, pursuant to T.D. 68-9."

Plaintiff complains the merchandise should have been classified under item 355.65, TSUS, as modified by Presidential Proclamation and as "amended by Public Law 89-241, as woven or knit fabrics (except pile or tufted fabrics), of textile materials, coated or filled with rubber or plastics material, or laminated with sheet rubber or plastics: Of vegetable fibers, at the rate of 9% ad valorem."

Defendant argues the imported merchandise is not a coated fabric for the reason that the tariff meaning of the term "coated fabric" requires the entire surface to be covered with a continuous uninterrupted layer of coating material and that the imported merchandise is not such a fabric. However, it is my decision that plaintiff's claimed classification should be sustained.

The pertinent headnote of TSUS as appearing in Schedule 3, Part 4, Subpart C states:

2. For the purposes of the tariff schedules—

(a) the term "coated or filled", as used with reference to textile fabrics and other textile articles, means that any such fabric or other article has been coated or filled (whether or not impregnated) with gums, starches, pastes, clays, plastics materials, rubber, flock, or other substances, so as to visibly and significantly affect the surface or surfaces thereof otherwise than by change in color, whether or not the color has been changed thereby;

The key words in this case are "visibly and significantly affect" and the definite weight of the record is that this standard has been met by plaintiff.

Four witnesses testified for the plaintiff and two witnesses were offered by the defendant. The evidence reveals the merchandise is a dyed and unnapped black fabric. It has been described as a fusible interlining cloth. The "35" at the end of the article style number (i.e. G503D35) reflects the addition of 35,000 points or "dots" per square foot each with an approximate diameter of 0.9

millimeters. The dots are not connected to one another but. are connected with the fabric.

The reason for the dot covering is to provide "good body" and "good form" for the merchandise. The degree of covering determines the resilience of the fabric, whether the merchandise will be stiff or loose. Whether these dots form a "coating" constitutes the crux of this case.

The mechanics of applying the dots to the fabric is called a "coating printing process." The machinery utilized by the trade for the process is known as "coating fusible interlining equipment." The parties largely concur as to the nature of the process. The finished fabric is run over a heated roller. A second roller, engraved with small holes which contain a fine polyamide powder, is pressed against the first roller with the fabric in between. After the powder thus is deposited, the fabric is passed through an infrared heating. After being permitted to cool, the interlining is complete.

Plaintiff's first witness, Heinz Schneider, a much experienced official of the West German Corporation which manufactured and sold the merchandise, stated that the continuous intermittent regularly coated fabrics were developed by him and his company in 1957. He further reasoned, on the basis of the relevant headnote standard heretofore set forth (Schedule 3, Part 4, Subpart C, 2(a)) that the merchandise was "coated." As to the visibility criterion, the witness testified: "You can see [the coating material]." As to the other headnote criterion, the witness responded that the polyamide dots significantly affected the fabric because subsequent to the application, the possibility of fusing with another fabric existed. His significant testimony mentioned *supra*, together with his observations that the fabrics have been considered "coated" since their development by his company from about 1967 to 1969 and that another German company deemed the merchandise coated too, remain uncontradicted. On the whole, Mr. Schneider's testimony was persuasive.

Similarly persuasive was the testimony of the importer's second witness, Jules Borrin, an executive of a domestic manufacturer of interlinings. According to him also, the material is referred to as "coated" within the tariff definition. "The visible effect," he noted on direct examination, "is a rough hand of dots, or, deposition," and the characteristics are changed. The merchandise is "significantly affect[ed]" by the application because "you couldn't use [it] unless it was going to be used" for the specific purpose of bonding.

Plaintiff's third witness, John W. Zettler, the general manager of a domestic corporation that manufactures and sells interlinings, contributed that the imported merchandise was coated and had a raised surface with "feel." Among the factors which contributed to his conclusion that the merchandise had been significantly affected was the

consideration that the character of the cloth was changed and another dimension was added.

The fourth and final witness for the plaintiff, Dino G. Fusaro, vice-president in charge of designing and quality control of a men's clothing manufacturer, concurred that the material was "coated." He attributed his conclusion to the substrate or material, that the fabric had been coated with a chemical.

The Government countered with two witnesses, both employed by the U.S. Customs Service. The first, Richard Lutzer, was a textile analyst, an assistant chief of the Fibers Branch with only approximately six credits of instruction in dyeing and finishing; the second, George Barth, was an import specialist of all non-woven fabrics. Both witnesses, however, lacked solid credentials in the specific area of coated fabrics and consequently their testimony was of considerably less weight and credibility than that of the plaintiff's witnesses. Having seen and observed the various witnesses and having carefully considered their testimony, it is my firm conviction that plaintiff has sustained its burden of proof.

Besides the unpersuasive testimony of their two witnesses, prior judicial decisions and legislative history are proffered to persuade the Court that the Government's interpretation should prevail. However, a careful examination of the decisions cited demonstrates that they are of an early date and not pertinent to the issue at hand.*

---

*In *In re White Son Company*, 1 Synop. Dec. 348, T.D. 19037 (1898), the Board of General Appraisers, the predecessor of this Court, was concerned with the classification of certain bookbinders' cloth. The Board upheld classification of the merchandise under paragraph 311 of the 1897 Tariff Act as "cotton cloth, filled or coated." The decision was based on the factual finding that the coating treatment involved there "completely filled the interstices between the threads of the fabric and rendered it opaque." There was absolutely no discussion at all as to what the outcome would have been if the cloth, as at bar, was less than completely coated. The same analysis applies for *In re F. H. Shallus*, 4 Treas. Dec. 382, T.D. 22966 (1901). All that is proved by the Government's lengthy quotation from the *Shallus* opinion is that in *that* case the covering "so permeated the fiber and filled or closed the interstices between the threads of the fabric as to render it entirely opaque * * * ." *Id.*, 382–83. The Court of Appeals for the Second Circuit considered the exact same statutory terminology in *United States* v. *Pinney, Casse & Lackey Co.*, 105 F. 934 (2d Cir. 1900), but the entire decision concentrated on the adjective "filled" not "coated." Whatever relevance the case has actually contradicts defendant's supposition since the Court read in the word "substantially" before "filled," not "completely."

In *Hudson Forwarding & Shipping Co.* v. *United States*, 18 CCPA 258, T.D. 44427 (1930), the issue was whether certain imitation lizard skin could be classified under paragraph 907 of the Tariff Act of 1922 as "waterproof cloth." Although the court ultimately decided that the proper classification was under the paragraph 907 provision for "filled or coated cotton cloths not specially provided for," neither the Appeals Court nor this Court (56 Treas. Dec. 669, T.D. 43750 (1929)) discussed whether the merchandise was "coated." The last cited case, *Respro* v. *Vulcan Proofing Co.*, 1 F. Supp. 45 (E.D.N.Y. 1932), is a patent infringement case. Defendant's own emphasis of the Court's dicta, *"A coat is a layer proposition that is integrate throughout, and is not usually broken up in any way nor subdivided"* (emphasis added in the Government's brief, page 22, citing *Respro* at 48), demonstrates that reliance on the case is not helpful. If a coat is "not usually broken up in any way," obviously in some instances a coat may be interrupted. In any case, *Respro* is inapposite here.

The only case which even remotely supports the defendant is *Frank J. Markwalter & Co. et al.* v. *United States*, 65 Treas. Dec. 205, T.D. 46887 (1934), wherein was alternatively raised the question of whether certain cotton gauze bandages might be classified as "filled or coated cotton cloths not specially provided for" under paragraph 907 of the Tariff Act of 1930. While the Court did hold that the importer's claim under this paragraph was untenable, the significant factual difference between the gauze involved there and the interlining here disallows any *stare decisis* effect. The *Markwalter* Court emphasized that "the open spaces left between the threads are so pronounced and conspicuous as to give the fabric a sievelike appearance." *Id.*, 207. Such a description would be wholly inaccurate for the merchandise here. On the law, *Markwalter* does not decide that "coated" means completely coated.

There is no question but that tariff terms are to be construed in accordance with their common and commercial meaning which are presumed to be the same unless otherwise proved. *Floral Arts Studio, et al.* v. *United States*, 46 CCPA 21, C.A.D. 690 (1958); Sturm, *A Manual of Customs Law*, page 202 and cases there cited.

It is the opinion of the Court that under the testimony of record the imported merchandise falls within the term coated fabrics as set forth in the applicable headnote, and as this was the only issue to be determined, it is the Court's conclusion that the merchandise is properly classifiable, as plaintiff contends, within item 355.65, TSUS, as modified.

Judgment will be entered accordingly.