RYDER v. SCHLICHTER.

(Circuit Court of Appeals, Third Circuit. November 16, 1903.)

No. 43.

1. PATENTS—INFRINGEMENT—SILOS.

The Harder patent, No. 627,732, for improvements in silos having a continuous opening from top to bottom, claim 4, which covers broadly braces between the edges of the walls forming the opening, door sections for closing the opening, and reinforcing strips for the door sections, is not limited to the special form of braces and strips described and shown in the specification and drawings, but is entitled to a reasonable application of the doctrine of equivalents, and as so construed is infringed by the structure of the Schlichter patent, No. 653,967.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

In Equity. For opinion below, see 121 Fed. 98.

S. O. Edmonds, for appellant.

E. Hayward Fairbanks, for appellee.

Before ACHESON and GRAY, Circuit Judges, and McPHERSON, District Judge.

J. B. McPHERSON, District Judge. This is a bill in equity to restrain the infringement of letters patent No. 627,732, granted June 27, 1899, to George Harder, now deceased, whose executor is the complainant, for improvements in silos. The validity of the patent is not disputed, the sole question being one of infringement, and this is to be decided by determining the scope of the fourth claim of the patent.

A silo, as is now well known—the art is comparatively recent—is a receptacle intended to preserve and store forage in edible condition, to be used during the winter and the spring. It has passed through several stages as the art has developed, and various improvements have been devised in order to meet the difficulties that have been encountered. The following extract from the brief of appellant's counsel explains clearly what characteristics must be found in a silo if it is to fulfill its purpose satisfactorily:

"The silo is a large tank-like structure, from fifteen to forty feet in height, and from eight to twenty-five feet in diameter, intended for the reception and preservation of forage in an edible condition. This forage, known as 'silage,' or 'ensilage,' is placed in the silo when fresh and green. The fermentation and settling which thereafter take place naturally impose a severe strain upon the silo. Added to this, for a portion of the year—from the time the silage is exhausted (toward the end of the winter) until the time when the silo is refilled (toward the end of the summer)—the silo stands empty. These considerations point to a fundamental requirement in the building of a silo, i. e., that provision must be made for the varying conditions of use and atmospheric changes, so that when the silo is filled it shall be absolutely airtight, since otherwise the silage would be spoiled by ingress of air thereto. Another fundamental requirement of a practical silo is that ingress to the interior thereof must be ready and easy, the construction being such as to facilitate the daily removal of silage, while still preserving the contents of the silo in sweet and nutritious condition.

"In a word, the essentials of a practicable silo are:

"(1) It must be, for the proper preservation of the silage, airtight at all times when filled, resisting the tendency to expand under the settling, swelling, and fermentation of the silage, as well as the tendency to contract after a portion or all of the silage has been removed or under the influence of the elements.

"(2) It must be of such construction as to provide for ready and convenient removal of silage therefrom, while still preserving the remaining silage from spoiling because of the ingress of air to the interior of the silo. And, finally,

"(3) It must be of such simple and durable construction as to permit ready and convenient assemblage of the parts and erection of the whole at the point where it is to be utilized."

The earliest silos were no more than holes in the ground. The stages of evolution from this primitive form to the developed structure of the patent in suit are thus described by one of the expert witnesses:

"First, a mere pit or excavation in the ground.

"Second, a pit or excavation lined with stones.

"Third, a pit having a stone lining extending some distance above the ground, lined with cement, and with a cement bottom and wooden roof.

"Fourth, a concrete building or pit entirely above ground, and presumably roofed.

"Fifth, a rectangular, double-walled, roofed structure entirely above ground, with separate door openings closed by removable doors and located at different heights in the structure.

"Sixth, cylindrical or round silos, above ground, presumably roofed, formed of horizontal boards, and either without any door openings at all (necessitating the removal of the entire bulk of material from the top) or else provided with separate door openings arranged at different heights in the wall.

"Seventh, round silos made with vertical staves, roofed, and either having no doors or else with separate distinct doors at different heights.

"Eighth, the Harder silo, made round or cylindrical, of vertical staves, with a continuous door opening, the sides of which are provided with reinforced posts, with braces connecting the posts to give the necessary strength, and also to act as a ladder, and with separate removable doors for closing the vertical door opening.

"The successive steps in the art thus show the gradual evolution of the silo from a mere pit in the ground to the perfected device of the patent in suit."

The Harder silo, which thus appears to be one of the latest devices in the art, is described in the specification as follows:

"My invention relates to silos or tanks of that class in which a continuous opening is made from top to bottom, through which the contents are removed at intervals. It is particularly designed for tanks used for holding ensilage.

"I have shown the invention as applied to a round silo composed of various staves and hoops made on the same general principle as a barrel, except that the staves are straight. The vertical opening in this silo is made from top to bottom and practically continuous, and the opening is closed by a succession of boards or sections of doors inserted and removable from the top downward like the opening and sectional closing of an icehouse. I do not herein claim, therefore, the vertical opening from top to bottom, nor the round construction of the tank or silo, nor the means for closing formed in sections and inserted so as to be removable from the top downward, and arranged to be pressed against the wall or any part of the wall in an outward direction, as I am aware that these devices and elements are very old in the same or analogous structures.

"My invention relates particularly to the special form of brace or stay-piece for holding the edges of the opening at the proper distance from each other to prevent collapse, and, further, in the special means for holding the sections of the door firmly in place."

"In the drawings, Fig. 1 shows a general form of a silo constructed with staves and hoops. It has an opening from top to bottom, as shown at a, and is bound together by hoops, b, extending completely around the silo. As a matter of course, the edges of this opening must be braced by crosspieces inserted between the edges to prevent the structure from collapsing. These braces are made in special form, as I now proceed to explain."

The patentee then goes on to refer to the drawings, and to explain the parts in detail, and, in order that the scope of the claims may be thoroughly understood, it is desirable to quote further from the specification:

"The form shown in Fig. 3 consists of a straight bar, c, having at each end a flange or bearing, d, at right angles, substantially, to the bar, c. These bearings or flanges are adapted to bear against the end of one thickness of the wall of the silo, but not to overlap, so as to interfere with the door sections. Outside of this bearing, d, is an inclined extension, e, of the brace, which is fitted to bear on the outside of the silo wall, and this is provided with holes, 1 and 2.

"Referring now to Fig. 2, it will be observed that a casing or reinforce, f, is provided on each side of the opening, and fixed upon the edge of the wall, so as to overlap said edge, and afford a bearing for the flange, d, and extension, e, the first bearing against the edge of the reinforce and the second on the outside thereof. The brace is held by bolts, g, which pass through the reinforce, and through a stave, and so bind the whole together. The door is composed of sections, h, which may be simply cross-staves, dovetailed and made so as to be placed one on the top of the other, with ends bearing on the outside against the reinforce, f. That part of the reinforce against which the ends of the pieces, h, bear is provided with rubber or other suitable lining to form an airtight packing. The pressure of the contents of the silo may be relied upon to press outwardly the pieces, h, to form an airtight joint, if constant care be used to press the material down in filling the silo, so as to create a sufficient pressure; but this constant care on the part of the workman cannot be relied upon, and I have therefore provided a metallic strip or plate, i, extending from top to bottom, and arranged to overlap the edge of the stave at the margin of the opening on the inside. The bolts, g, pass through this plate, and are held in any suitable manner. Preferably the bolts are headed on the inside, and are provided with nuts on the outside, so that they may be turned up to draw the flange in closely after the pieces, h, are inserted, or the bolts may be riveted or otherwise set in fixed position, the parts being adjusted so that the pieces, h, may be crowded down one after the other firmly in place, and so closely fitting as to bear tightly against the packing. The reinforce may be on the inside instead of the outside, as shown in Fig. 6, in which case the brace will bear against the outer edge of the staves, and the sections, h, will bear against the inner surface of the staves, and abut against the edge of the reinforce. This construction I regard as equivalent.

"In order to obviate the necessity of a separate ladder or ladders, brackets are fixed upon the outside of the silo, and to further strengthen the brace I have provided an additional outside bar on the brace (shown at m). If the brace be made of cast iron this additional bar may be cast in one piece therewith, and if of wrought iron it may be separate and the parts riveted together. Preferably I curve the bar outward slightly, as shown in Fig. 3, and proportion the metal in the parts so that the strain at the ends may be provided for. This construction brings the ladder at the point where the door sections are to be inserted and removed, and it is convenient, and saves the expense of a separate ladder.

"The cross pieces or sections, h, in practice are of the same material as the staves, and are simply narrow strips of board with dovetails, the boards being set with the ribs presented upward and the grooves downward, to prevent water accumulating in the grooves. They may be taken out in discharging the silo, one by one, so that no lifting of the material is required. It may then be simply raked out."

The four claims of the patent are as follows:

"(1) In a silo or tank having a continuous opening from top to bottom, and a reinforcing strip at the edges of the opening arranged to form an overlap, a packing on the inner face of the overlapping part, a brace having shoulders bearing against the overlapping edges, and an extension bearing against the outer face of the overlapping part, in combination with crosspieces or door sections, h, arranged to bear at their ends against the packing and bolts for holding the parts together, substantially as described.

"(2) In a silo or tank having a continuous opening from top to bottom, and a reinforcing strip on each side arranged to form an overlap, said overlap having a packing on its inner face, a brace having shoulders arranged to bear against the edges of the overlapping part, and extensions bearing upon the outer face of said part, in combination with the sections, h, arranged as described, and with a plate, i, and suitable bolts holding the parts together.

"(3) In a silo or tank having a continuous opening from top to bottom, and door sections arranged across the opening, an overlapping part against which the said sections bear, and a bracket composed of a straight bar having shoulders adapted to bear against the overlapping part, and an additional bearing, m, forming at the same time an additional brace, and serving as the bar of a ladder, substantially as described.

"(4) In a silo or tank having a continuous opening from top to bottom, braces between the edges of the walls forming the opening, door sections for closing the opening, and reinforcing strips for the door sections, substantially as described."

Only the fourth claim is involved in this controversy, but it is necessary to quote the others, in order to make clear the view that we have felt constrained to take upon this appeal. There can be no doubt that, if the words of this claim are to be given their ordinary meaning without qualification, all the elements of this combination are found in the defendant's structure. He holds a later patent, No. 653,967, granted July 17, 1900, and the infringing silos are built in accordance with this in all respects save one that is not material; but, conceding the validity of his patent for present purposes, it raises no presumption against the earlier patent, and cannot furnish the defendant a license to use with impunity any combination described in the patent to Harder. Even if the later patent discloses invention, a question upon which the Patent Office had much doubt, as the file wrapper shows, it must be subservient to the earlier grant. As already stated, it cannot, we think, be successfully denied that the combination described in the fourth claim is used by the defendant. Indeed, we do not understand that the defendant denies infringement, unless Harder's fourth claim is to be so restricted as to confine him to the precise structure described by his drawings and specification. That the claim must be so restricted because of the language of the specification was the position taken in the court below, and was accepted by the learned judge as sound, as the following quotation from his opinion will show (121 Fed. 99):

"These extracts, I think, make it clear that a silo, though having a continuous opening from top to bottom, is not covered by the fourth claim, unless it be furnished with the braces and reinforcing strips called for; and the question which at the outset is presented, therefore, is: What, as respects these essential elements, does the claim embrace? Does it comprehend all devices which may be inserted between the edges of the walls to prevent them from moving, and all contrivances designed to hold the door sections firmly in place, or should the claim be so construed as to limit its scope to the braces and reinforcing strips specifically described and shown, notwith-

standing the fact that the broadly inclusive terms of the claim are not coupled with any words of qualification other than the phrase 'substantially as described'? With reference to this question it may, in the first place, be remarked that the courts are not required to shut their eyes to matters of common knowledge or things in common use (King v. Gallun, 109 U. S. 101 [3 Sup. Ct. 85, 27 L. Ed. 870]); and surely it may safely be said that, generically speaking, braces for holding the edges of an opening at the desired distance from each other, and means for retaining doors or analogous movable parts in position, were commonly known and had been generally used long before this patent was applied for; and it is quite evident that the patentee was not ignorant of this, for in his specification it is said: 'My invention relates particularly to the special form of brace or stay piece, * * * and, further, in the special means for holding the sections of the door firmly in place.' The drawings, it is said, show 'the invention,' not an optional or preferred embodiment of it; and the braces, which it is again said 'are made in special form,' are explained with reference exclusively to that form which the drawings portray. So, too, as to the reinforcing strips. The specification states that certain variations in details, which are not now material, may be made without departing from the invention, but there is no suggestion whatever that anything other than the reinforcing strips which are specifically described and delineated would be within it. It has, however, been argued that, unless the fourth claim be broadly construed, it covers nothing which is not covered by the preceding claims, and I agree that a construction involving such a result should, if possible, be avoided. But in the present instance this consideration, if applicable, cannot be accorded controlling effect. It is not altogether inconceivable that a superfluous claim may have been improvidently allowed, but it is quite certain that no claim can, for any reason, be inclusive of anything more than the invention disclosed. I therefore hold that the claim alleged to have been infringed in this case must be restricted to a silo or tank having the specific braces and reinforcing strips described in the specification and shown in the drawings, and the only remaining question which it is necessary to consider is whether or not those particular braces and strips have been appropriated by the defendant."

Thus confined, it was held that the defendant's device did not infringe the patent. We are not now concerned with this conclusion, for we cannot help believing that too narrow a construction was given to the claim in controversy, and that it was entitled to a more liberal interpretation. It is evident that the express terms of the claim do not limit the patentee to a particular device, and therefore the construction adopted by the court below practically rewrote the claim, and in effect expunged it from the patent; for to limit it to the one form of structure described in the specification and shown in the drawings necessarily introduced into the claim such modifications of the language used by the inventor as turned it into a substantial, and therefore a superfluous, equivalent of the claims preceding. These three claims are concerned with the particular structure described by the drawings and the specification, and to confine the fourth claim, which is drawn broadly, to such a structure, denies to the claim any effect whatever. This, we think, goes too far. It requires us to suppose that the inventor prepared a claim whose words do not mean what they say, and should be so modified as to make them a mere repetition of other claims, and that the patent office also knew that the words were to be read with limitations that are not stated, and nevertheless allowed the claim to stand. Harder's invention may not have been of primary importance, but he seems to have been among the first, if not the very first, to make silo-building a commercial art, and his structure is an unques-

tionable improvement in several particulars over all its predecessors. It is entitled to protection, and to a reasonable application of the doctrine of equivalents. We are of opinion that the claim in controversy, read in connection with the other claims and with the specification, should not have been confined to the particular device shown by the drawings. Such a restriction was not required by the prior art, in order to save the claim from being declared invalid, and, except for the purpose of saving a claim, its scope should not be restricted beyond the fair and ordinary meaning of the words. The reasons for a liberal interpretation of a patent are well known, and are thus stated in Winans v. Denmead, 56 U. S. 341, 14 L. Ed. 717:

"While it is undoubtedly true that the patentee may so restrict his claim as to cover less than what he invented, or may limit it to one particular form of machine, excluding all other forms, though they also embody his invention, yet such an interpretation should not be put upon his claim if it can fairly be construed otherwise, and this for two reasons: (1) Because the reasonable presumption is that, having a just right to cover and protect his whole invention, he intended to do so; (2) because specifications are to be construed liberally, in accordance with the design of the Constitution and the patent laws of the United States, to promote the progress of the useful arts, and allow inventors to retain to their own use, not anything which is matter of common right, but what they themselves have created."

See, also, Consolidated Fastener Co. v. Columbian Fastener Co. (C. C.) 79 Fed. 795, and Gaisman v. Gallert (C. C.) 105 Fed. 955.

The decree of the Circuit Court is reversed, with costs to the appellant, and the case is remanded, with direction to enter the usual decree in favor of the complainant below.