RYDER et al. v. TOWNSEND.

(Circuit Court, N. D. New York. April 1, 1911.)

**1. PATENTS (§ 328\*)—VALIDITY AND INFRINGEMENT—SILO.**

The Harder patent, No. 627,732, for a silo, having a continuous opening from top to bottom, claim 4, which covers broadly in combination braces between the edges of the walls forming the opening, door sections for closing the opening, and reinforcing strips for the door sections, was not anticipated, discloses invention, and is entitled to a fairly liberal construction and range of equivalents. Also *held* infringed.

**2. PATENTS (§ 167\*)—VALIDITY—BROAD AND SPECIFIC CLAIMS.**

When an inventor makes an invention and in his specification points out a specific construction, he may claim the specific construction and also have a general broad claim, and when this is done, in order to sustain the broader claim, it is not necessary that he should point out in his patent that the specific construction shown is not essential to the invention.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 167.\*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. PATENTS (§ 288*)—SUIT FOR INFRINGEMENT—RIGHT TO SUE USERS.

Where infringing articles are in use in the district in which the owner of the patent resides, although made elsewhere, he is not subject to criticism for exercising his legal right to sue the users in that district instead of going to the district of the manufacture and there bringing suit against the maker.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 288.*]

In Equity. Suit by Edgar S. Ryder and others against Edward Townsend. Decree for complainants.

Samuel Owen Edmonds, for complainants.

Briesen & Knauth (Hans v. Briesen, of counsel), for defendant.

RAY, District Judge. [1] On the 27th day of June, 1899, on an application filed February 4, 1899, letters patent No. 627,732 were issued to George D. Harder for certain improvements in silos, the invention relating "to silos or tanks of that class in which a continuous opening is made from top to bottom, through which the contents are removed at intervals." It was particularly designed for tanks for holding ensilage, or silage, as it is sometimes called. The patentee in his specifications, says:

"I do not herein claim, therefore, the vertical opening from top to bottom. nor the round construction of the tank or silo, nor the means for closing formed in sections and inserted so as to be removable from the top downward and arranged to be pressed against the wall or any part of the wall in an outward direction, as I am aware that these devices and elements are very old in the same or analogous structures."

The patentee, Harder, then says:

"My invention relates *particularly* to the special form of brace or stay-piece for holding the edges of the opening at the proper distance from each other to prevent collapse, and, further, in the special means for holding the sections of the door firmly in place."

The claim in issue is broad, and limited only in that it relates to the braces between the edges of the walls forming the opening extending substantially from the top to the bottom of the silo, the door sections for closing this opening, and reinforcing-strips for the door sections or openings, and by the words "substantially as described," meaning, of course, that he claims what he has described in these regards and their substantial equivalents.

To understand what the patentee was speaking of, and the utility of the parts referred to, it is necessary to inform ourselves as to what a silo is and its uses. Used almost universally for packing therein, until taken out for feeding, green cut forage, such as corn, stalks and all, which is necessarily moist and fermentable, and contains considerable acid, and which, so far as possible, must be excluded from the air until actually fed lest it spoil, and which must be packed in evenly, solidly, and firmly with the least possible air spaces, the silo should be cylindrical and from 25 to 50 feet high, and from 10 to 15 feet in diameter, the diameter being uniform from top to bottom so as to secure uniformity in the settling of the contents and exclude air spaces, and constructed of upright staves tongued and grooved together and made

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

perfectly smooth on the interior so as not to interfere with or impede the easy and uniform settling of the silage. This, with a suitable foundation and bottom, and a suitable roof or covering, with an opening for the entrance of the ensilage when and as cut and carried into the tank, forms the best wood silo known so far as preserving the ensilage is concerned, if we add suitable hoops extending about it at proper intervals so as to keep it in place; that is, prevent its too great expansion or out-bulging when newly filled, or its collapse when the contents are wholly or partially removed and shrinkage of the wooden staves occurs. These hoops must be strong, adjustable, and capable of being tightened. If the problem of an efficient and useful silo ended here, Harder, the patentee, would be outside the art entirely. But thus far we have provided a receptacle for the silage and means for preserving it only. We have made no provision for removing a part of it at intervals, during the barn-feeding season, say, one or twice each day during the winter and early spring. Hence the necessity for the vertical opening on one side from top to bottom which was found better or more labor saving than a series of openings the one above the other with a closed space between. This last construction necessitated going in and lifting about one-half the contents a greater or a lesser distance, while with the continuous opening a man may go up the ladder on the outside of the silo and, without entering (except at long intervals), rake out the desired quantity. But this continuous opening must be kept closed and air tight (so far as reasonably possible) after the silo is filled, and the means for closing such opening must be in sections so that it can be removed section by section, and from the top downward as the ensilage is removed or fed out, a few inches in depth each day. If an opening is made at the bottom of the silo and the contents taken out there the air enters, permeates the mass above, and the fodder or ensilage is spoiled. To put in sliding sections of door to close this continuous opening supported by cleats was easy enough and within the skill of the ordinary farmer or mechanic, but this did not prevent leakage or exclude air and interfered with the settlement of the ensilage. Neither did this construction prevent a collapse of the structure when the ensilage was wholly or partially removed. With the door sections held in position when the silo was full by the outward pressure of the contents alone the continuous opening from top to bottom so weakened the structure that when the contents were removed and even at other times, the staves would spread apart and towards this open doorway. Hence the edges of this doorway must be kept in normal position—that is, apart and upright—and braces for this purpose were inserted extending from side to side across this doorway at intervals. And it was desirable and necessary to have the sections of door fit in tightly and be self sustaining, not trusting to the pressure of the ensilage behind them, in the interior of the silo. To efficiently hold the edges of the walls of the silo on each side of this doorway apart and in position by means of braces, it was necessary to strengthen or reinforce such edges with additional material. Put in a brace from one side of the doorway to the other, each end of the brace resting against the edges of the side walls, and almost any inequality of pres-

sure on the respective ends of the brace, or even on the contents of the silo, would result in the inward bending of the one "edge" and the outward bend or spring of the other "edge." Harder set himself to the problem of providing better and more efficient means of so bracing the doorway or adjacent walls of the main body of the silo as to prevent springing out of position and collapse, maintaining, so far as possible, an even interior surface and without interfering with the sections of the door and their movement; and also to the problem of providing better and more efficient means for holding the sections of this door extending from top to bottom of the silo firmly in place while at the same time being made easily movable and air tight. He was an improver, and in his line of improvement in silos of this construction a pioneer in the silo art.

### Cannon's Patent.

Before going into what Harder actually did we will refer to what had been done by way of a prior patent to one Warren B. Cannon, granted May 9, 1899, on application filed October 17, 1898, No. 624, 751. Cannon in his specifications, said:

"The object of this invention is to provide a silo having a series of door-openings one above another for putting food into the silo from the cutting machine and removing the same" (from the silo).

Also:

"A further object consists in the peculiar and convenient means of fastening the doors in the door openings, as particularly set forth below."

Harder assumed a silo (circular in form) with a continuous opening or doorway from top to bottom of the silo, closed with a continuous door made in sections, so as to be removable section by section, and he set himself to properly bracing such doorway to keep it and the rest of the silo in proper position, and also to providing special means for holding these sections of his continuous door for closing the doorway firmly in place. Cannon, on the other hand, did not deal at all with a continuous vertical doorway or opening, extending from top to bottom of the silo, but with a series of doors, the one above the other with a closed space integral with the walls of the silo, between, and means for fastening these several and distinct doors in their several openings or doorways. Fig. 1 of the Cannon patent shows this clearly and distinctly. Fig. 3 shows his door, 7. I do not consider it necessary to go into the history of the development of the silo from the hole in the ground to the modern portable silo of wood such as is described in the patent in suit, or the stone or brick silos with cement linings. It is obvious that the braces of the Harder patent would be superfluous in stone or brick silos. The special means for holding the sections of the door in place might not be. Cannon had several openings in the side of the silo, the one above the other, each forming a separate and distinct doorway and each calling for a door. He had door frames for each opening consisting of an upright strip on each side grooved to fit the adjacent stave. The inner faces of these side pieces were cut or mortised out to form a shoulder into and against which the door itself when put in position (from the inside of the silo) would fit. To

the ends of the short staves between these doors or doorways, he attached strips of metal running from side to side of the door opening and projecting somewhat above the staves at the bottom of the doorway and below the staves at the top of the doorway so as to form a shoulder at the top and bottom of this door frame for the door itself to rest against as well as against the shoulders in the side pieces. This completes his door frame, and does not differ materially from the old-fashioned frame of the farm stable window, the window made detachable from the inside or to swing inwardly, the projection of the shoulders being on the outside to aid in keeping out the cold. In this silo these projections of the shoulders are on the outside as the pressure of the ensilage comes from the inside of the silo and the shoulders prevent the doors from being pushed out entirely and also aid to make the door air tight. Cannon's door was made of short staves tongued and grooved together and also held together with outwardly projecting cleats, so outwardly projecting for the purpose of furnishing a handle when pulling them into position or removing them from position (done from the outside), and was also provided with a rubber packing strip on its outer face running around its outer edge. When brought into position this rubber packing would come against the shoulders of the door frame before described. Each door had four bolts, one near each corner with head on the inside of the door, the bolts projecting outwardly with screw threaded end. He had two "securing trusses" or long bars with holes therein for receiving such bolts, such trusses having end projections (projecting towards the body of the silo). Put the door in position, slip the "securing trusses" on the bolts, put nuts on the bolts and turn them down and the door was drawn securely and firmly against the shoulders of the frame and the end projections of such securing trusses against the outside of the door frames or sides of the silo itself and the door was held securely in position. Unscrew the nuts, remove the trusses, and the ensilage having been removed, the door was pushed in on the ensilage below and then taken away. This was held patentable, or at least was patented in the Patent Office in 1899, about 10 years ago. He claimed:

"A round silo, constructed of staves, having a series of door-openings and shoulders and flanges for the doors to fit against, in combination with the doors, the detachable trusses fitting against the staves of the silo (by means of the projections on such trusses), and binding bolts projecting outward from the door and passing through the trusses."

It is seen that this in no sense anticipates Harder. Cannon had no use for braces as he did not have a continuous opening from top to bottom. The spaces between his door openings were filled with a continuation of the body of the silo itself and these formed sufficient braces. The method of holding a detachable door or window in a frame having shoulders for it to press against by means of headed bolts extending through such door far enough to take on a bar of wood, or iron, and receive nuts for drawing the door firmly against the shoulders, the bar of wood extending beyond the opening on each side so as to be drawn against the walls of the building, was so old and so common years before Cannon was grown to manhood that courts

ought to take judicial notice of it, but Harder did not copy this method in improving on the prior art. What did he do?

### Harder's Improvements.

After showing a round silo bound together by hoops, Fig. 1, with a continuous opening from top to bottom, Harder says:

"As a matter of course the edges of this opening must be braced by cross-pieces inserted between the edges [of the opening, by "edges" meaning the termination of the walls of the silo on each side of the opening] to prevent the structure from collapsing. These braces are made in special form as I now proceed to explain."

He then describes one form of his brace which consists of a straight bar having at each end thereof a flange or bearing at right angles, substantially, to the bar. These bearings or flanges are adapted to bear against the edge of one thickness of the silo wall where it ends and the opening begins, but not to overlap the entire edge of the silo wall so as to interfere with the door sections which are to close the opening. Outside of this bearing, at each end of the brace, and reaching beyond the end of the brace proper (which now has a shoulder consisting of the "bearings" fitting against the side walls of the opening) is an inclined extension of the brace fitted to bear against the side walls of the silo and on the outside thereof. These extensions have, each, two holes to receive bolts, which preferably are headed on the inside and have a screw threaded and projecting outwardly to receive nuts. However, they may be riveted or placed in a fixed position. He also provides an additional outside bar on this brace to make it stronger, but this is in no way essential to the Harder invention. This is the Harder brace aside from its more secure attachment to the silo itself. We have seen that by means of the "bearings or flanges" at right angles to the brace proper and adapted to bear against the edge of one thickness of the wall of the silo, the brace would keep the walls of the silo at the sides of the opening from pressing into the opening, collapsing, but it might drop down or slide down or fall out. In providing means for making sure that the braces are maintained in proper position, Harder has combined therewith his means and manner of holding the sections of his continuous door in place and also means for strengthening the edges of the silo walls at each side of this continuous opening.

First: On each side of this continuous opening he attaches an additional piece of timber, f, f, shown in Fig. 1, which may or may not be integral from top to bottom. This is outside the main wall of the silo, but attached, and it is seen that this may as well be all of one piece, double thickness, tongued and grooved so as to form a part of the wall proper of the silo, but making it of greater strength and rigidity at this point or at these points each side of the doorway. The one structure is the plain equivalent of the other. In either structure we have reinforced the silo walls at the points next the continuous door opening so as to maintain rigidity and prevent the collapse of the silo. However, there may be an advantage in having the reinforcing

strip outside the stave of the wall proper at this point, as we shall see. Of this reinforce, *f*, Harder says:

"Referring now to Fig. 2, it will be observed that a casing or reinforce, *f*, is provided on each side of the opening and fixed upon the edge of the wall so as to overlap said edge and afford a bearing for the flange, *d*, and extension, *e* (being parts of the brace before described), the first bearing against the edge of the reinforce and the second on the outside thereof."

Second:

"The brace is held by bolts, *g* (the bolts before mentioned), which pass through the reinforce and through the stave (at the edge of the opening) so as to bind the whole together."

It is at once seen that if this stave at the end of the silo wall next the opening and the reinforce is all of one piece, double thickness properly grooved and tongued to the silo wall so as to make it a part thereof, and then cut out on the inside so as to form a flange and shoulder for the door section itself to fit into and rest against the bolts would not be necessary for holding the staves and reinforce together, but only to hold the brace to this part of the silo wall. Such a piece made of double thickness would not only form a part of the silo wall, but make a door casing on each side of the opening. In this shoulder, whether formed in the one way or the other, the door section can be moved up and down as the braces, or the bearings or flanges thereof "adapted to bear against the edge of one thickness of the silo (the reinforce), but not to overlap so as to interfere with the door sections," do not extend inwardly far enough to interfere with the movement of such door sections. These braces, thus attached, whether we have the stave of the silo with the reinforce at each side of the opening, or the single piece made of twice the thickness of the stave, keep the walls of the silo in position and effectually prevent collapse.

### The Door Sections.

Harder says:

"The door is composed of sections, *h*, which may be simply cross staves dovetailed and made so as to be placed one on top of the other with the ends bearing on the outside (not outside of the silo but outside piece) against the reinforce, *f*."

And further:

"That part of the reinforce against which the ends of the pieces, *h* (the side edges or ends of the door sections), bear is provided with rubber or other suitable lining to form an air-tight packing."

It will be remembered that Cannon placed his packing on the door itself, about its outer side next its edges. Harder continues:

"The pressure of the contents of the silo may be relied upon to press outwardly the pieces, *h* (forming the door sections), to form an air-tight joint, if constant care be used to press the material (ensilage) down in filling the silo so as to create a sufficient pressure; but this constant care on the part of the workman cannot be relied upon, and I have therefore provided a metallic strip or plate, *i*, extending from top to bottom (of the opening or doorway) and arranged to overlap the edge of the stave at the margins of the opening on the inside (inside of the silo). The bolts, *g*, pass through this plate and

are held in any suitable manner.  Preferably the bolts are headed on the inside and are provided with nuts on the outside, so that they may be turned up to draw the flange (overlap) of the metallic strip of plate, *i*), in closely after the pieces, *h* (door section), are inserted, or the bolts may be riveted or otherwise set in fixed position, the parts being adjusted so that the pieces, *h* (door sections), may be crowded down one after the other firmly in place and so closely fitting as to bear tightly against the packing."

It is seen that the construction is such that, whether we use the reinforce or the double thickness with a shoulder cut in, when the metallic strip, or plate, *i*, is added we have a continuous groove or slideway with a rubber packing in which the door sections may slide or be moved from the top to the bottom of the doorway.  And it is perfectly obvious that the insertion of the door sections is intended to be and must be at the top whence they are slid down into position as the silo is filled. When the removal of ensilage has progressed down to one of these sections it may be slid or moved up and taken out, or moved up and left in, and tacked in place so as not to fall on the one in or about the opening below, or, if the bolts with nuts are used and not put in a fixed position, the nut may be turned up after the section is slid or moved upward and the compression of the metallic strip, *i*, will hold it in place above that part of the opening in actual use.  In short, in emptying a silo by feeding it is not necessary to take out more than the top section of door, if that, as they may be moved up and fastened, the one after the other, and found there when the fall comes and the silo is again filled.  This is an advantage, as the sections are not in danger of being lost, misplaced, or injured, as is the case when actually taken out.  Of course it is optional with the farmer whether or not he will wholly remove the door sections.  As the hoops binding the silo together pass entirely about it and cross the opening these have been used as a ladder, if sufficiently numerous, although this is not wise, for obvious reasons.

### Commercial Success and Adjudication.

Silos thus constructed, and with a door opening and braces and door sections as described, and which silos may be and are made in sections so as to be easily transported, and which may or may not have a roof, depending on whether erected inside or outside a building, have proved a commercial success.  The Harder patent was held valid in the Third Circuit by the Circuit Court of Appeals, although the defendant claims it did not there appear that there was any prior art in silo construction.  It is obvious that this construction may be varied in many ways without departing from the spirit of the alleged invention. For instance, we may substitute a wooden strip for the metallic strip, *i*, or we may do away with that strip entirely and cut out in the single piece next the opening, made of double or greater thickness, a groove or slideway for the door sections.  The one would be the substantial equivalent of the other for all practical purposes, although the groove, or slideway, cut in a suitable piece of timber, would be more expensive than the groove formed by adding the metallic strip, and there would be no way of clamping the door sections by means of the bolts and nuts unless the bolts were made movable in the grooved timber or

frame, and so attached to the door section as to draw it against the shoulder when the nut is turned up. And in such case it would be impossible to move the door section up or down until the bolt is removed. However numerous, inexpensive devices can be substituted for this mode of drawing the door sections against the flanges or shoulders of the door frames without interfering with their up or down movement.

Claim 4 of the Harder patent in a silo or tank having the continuous opening from top to bottom does not purport to claim the door sections or the means or mode of inserting, removing, or holding them in place alone. It does in such a silo claim the combination of (1) the braces between the edges of the walls forming the opening; (2) door sections for closing the opening; and (3) reinforcing strips for the door sections. As the door sections of themselves—that is, the sections of the door—have no reinforcing strips, but the silo wall, next the opening and on both sides thereof, each, has a reinforcing strip or strips overlapping the wall proper on the outside of the silo (see Fig. 2), or overlapped by the wall proper when used on the inside of the silo (see Fig. 3), against which, or against the flange or shoulder formed by such overlapping, the sections of the door rest and are pressed, we must either read the words "and reinforcing strips for the door sections" as meaning reinforcing strips for the use of and to support the door sections proper, or as forming a part of the door sections proper, although in no way connected therewith except when in use by pressing the one against the other, if we take the specification as properly defining the door section proper, viz.:

"The door is composed of sections, *h*, which may be simply cross-staves dovetailed and made so as to be placed one on top of the other with the ends bearing on the outside against the reinforce, *f*."

In both Fig. 1 and Fig. 2, the sections, *h*, or door sections, are pointed out by *h*, and as the sliding or movable parts of the door. In a broader sense "door sections" may be construed to mean, or include, that part of the silo which takes in or includes the opening, the door proper, or sections of the door proper when in position, and also the staves next the opening and the reinforcing strip, against which staves and strips the door sections above described abut.

This combination of door sections proper and braces and reinforcing strips, for keeping and maintaining in position the walls of the silo next the openings for the double purpose of preventing collapse of the silo structure and enabling the door made in sections to perform its function, was new, and in my judgment disclosed patentable invention. Clearly it was not anticipated. I do not mean to indicate that it was a new or patentable conception for Harder to use braces of some sort and a reinforce to keep the walls next the opening in normal position and prevent collapse. It was not a new idea with him and would have occurred to any ordinary farm hand, or at least any carpenter and joiner. In Farmers' Bulletin, No. 32, U. S. Department of Agriculture, 1895, four years prior to Harder, Charles C. Plumb, B. S., gave a historical description of silos and their uses; ideas as to their cost, form, and construction; and in his "Miscellaneous Suggestions" said:

"The feeding door should be about 2½ to 3 feet wide, and extend in sections from the sill to within 3 or 4 feet of the top, each section being about 5 feet long. Portions of the wall 2 to 3 feet wide should be left between the sections of the door at sufficient intervals to make the wall perfectly strong. Some persons prefer iron rods for this purpose, and then have a continuous line of doors from top to bottom. Boards as long as the door is wide must be placed horizontally in the frame, edge to edge and flush with the inside of the silo, resting against cleats nailed on the inside of the casing. These boards may be put in place as the silo is filled. The studs on each side of the door should be re-enforced to give sufficient strength to the silo wall at this point."

## Does Defendant Infringe?

The defendant is a mere user of a portable round stave silo with a continuous opening on one side for feeding, or taking out the ensilage and permitting ingress and egress, extending from top to bottom, and which has a brace or braces extending across said opening to prevent collapse and the ends of which brace engage with the edges of the silo walls respectively next such opening, that is, is placed between the edges of the walls forming the opening, and which silo has, also, door sections for closing the said opening and reinforcing strips for the door sections. If Harder is entitled to a broad construction the defendant infringes as he is within this broad claim 4, of Harder. But Harder is, of course, limited to what he has described and its well-known equivalents. Not to his precise forms, however. He is entitled to a liberality of construction commensurate with his described structure and disclosed invention. Harder, in a circular silo, with the continuous opening combined a door made in sections (removable) with braces or stay pieces of special form, and also with special means for holding the several sections of the door firmly in place and also with reinforcing strips for the door sections in the sense or senses referred to. The circular silo used by the defendant having the same continuous opening, combines a door made in sections (removable), with braces or stay pieces of special form, and also with special means for holding the several sections of the door firmly in place, and also with reinforcing strips for the door sections in the same sense Harder uses the expression, and in the same place in his silo Harder has the strips in his, and for the same precise purpose, to prevent collapse. However, the special form of defendant's brace, in some respects, differs from the special form of Harder's brace, and the special means of defendant for holding the sections of the door firmly in place differ somewhat from the special means of Harder, and the reinforcement of defendant's structure next the opening also differs somewhat from Harder's.

## Differences.

Commencing with the reinforcement of defendant's structure, we find that it answers to every function and purpose of Harder's reinforce and is its equivalent. It is made in one piece of more than twice the thickness of the stave, but is tongued and grooved to the staves so as to form a continuation of the walls of the silo and make them strong and rigid at the beginning of or next the opening on each side thereof. These reinforcements also receive the brace or braces be-

tween them to prevent collapse. These thick, heavy reinforcements of the defendant extend further into the interior of the silo than the other staves. Each reinforcing piece is grooved on the face next the opening, and this groove extends from the top to the bottom of the opening, and carries the door sections which may be moved up and down therein. On the part of this reinforce inside or beyond the groove (looking into the silo), it is rounded for a purpose to be described. The portion of this reinforce outside this groove presents a flat surface against which the end of the brace abuts and an extension inwardly of the brace, which is made thick, and also a prolongation of such brace fits into the groove and upon the rounded portion of such reinforce. In this construction this brace actually fills the groove at this point so that door sections inserted from above cannot slide below it. A section is cut from the upper back of this brace forming a shoulder so that a corresponding flange of the door section above fits into the cut or shoulder. This brace would be just as efficient and fully perform all its necessary functions if it did not extend inwardly to the groove so as to obstruct the groove or runway and prevent the up and down movement of the door sections. This brace for its width up and down serves to close that part of the opening. The rounded portion of this reinforce answers to the metallic strip or plate, $i$, of the Harder patent, except it cannot by bolt and nut be drawn against the door sections. This brace has an extension and a shoulder as seen. It is a straight bar, and has the equivalent of a bearing or flange at right angles therewith adapted to bear against the edge of one thickness of the wall of the silo. It does, in fact, overlap and interfere with a door section at that point, but, as stated, it was evidently made that way designedly and not necessarily. The brace has no inclined extension outside the bearing fitted to bear on the outside of the silo wall, but it does have an extension inside the bearing extending into and against the side of the groove. This extension might just as well be on the outside of the silo and fitted to bear on the outside of the wall as on the inside of the groove. The function and mode of operation in performing it is the same as in Harder's brace. The construction is more cumbersome. This brace is made in two parts connected with a hinge with shoulders which is cut into the brace from the outside. Press the hinge inwardly and the brace is loosened and drops out. Place the ends of the brace in the grooves and press outwardly and the brace becomes rigid in place and is held there. This method or mode and means of holding a brace in place is old. It is, of course, less reliable and efficient than Harder's. The mode of putting the brace in and of taking it out differs from Harder, but its function in the combination is the same.

The silo used by the defendant has door sections of suitable height made in two pieces, but fitted together by a half round on the end of the one piece and a rounded groove on the end of the other with felt or other material in the bottom of the groove. These are hinged together. The outer ends are rounded out to fit the half round of the reinforce before described so that when in place they are moved up or down at will sliding on said rounded portion, except when brought

in contact with the brace. Cut off the inner projecting portion of defendant's brace which can be done without impairing its function or efficiency and these door sections would slide past the brace. Each of these door sections may be slid in or out at the top and elevated to or fastened at any desired point and tacked temporarily in position. They are in all respects the equivalent of Harder's door sections proper. How and by what means are they so brought together and against the reinforced edges of the silo at the opening, and on both sides thereof, that they press firmly against the flange or rounded part of the reinforced wall so as to exclude the air? As stated, the outer ends of these door sections are grooved to fit on the rounded portion of the reinforce. In the bottom of these grooves is placed rubber or felt or some suitable material so as to make a tight joint or closure. Bend the hinge by pressly inwardly, and the door section is so much shortened that the ends can be placed on the rounded part of the reinforce. Now close the door section by bringing the hinge into position, and the grooved ends are pressed firmly against the rounded portions above described, and we have a tight joint in the center and at the ends of the door sections. These sections may be removed by pushing in on the center, operating the hinge, the ensilage behind having been removed, when the section will fall out or easily be pushed out.

Defendant's door sections have also a flange on the upper outside edge of the bottom section formed by a cut-out portion behind it. The next section has a flange on the inside lower edge formed by a cut-out portion in front and a similar flange formed in the same way on its upper edge or side. When the one section is pressed down on the one below the flanges enter or fit into the cut-out portion, or the flange of the one shuts by the flange of the other tending to make a tight joint. These are elaborate door sections, and may be superior to those of Harder, but they are the equivalents of his, and perform the same function in obedience to the same law and in substantially the same way. It is, of course, true that if Harder is confined to the special and particular or exact form of door sections and mode and means of holding them in place described, and to the special and particular and exact form of brace described, and the special and particular and exact form of reinforce described, and his claim 4 covers nothing more or broader, defendant does not infringe as he does not use them.

However, he does use their mechanical equivalents in the same combination where the office and end of the combination is substantially identical with Harder's, and where each element of the combination performs the same function in the combination as does the corresponding element of Harder. I take it that the patent law is settled that a patentable combination is infringed when the alleged infringer has all the same elements in his combination, or their substantial equivalents, operating in substantially the same way, each performing the same function in the combination, even if it does something more and is an improvement, and the two combinations as a whole operate in substantially the same way and produce the same result or serve the same purpose. A person cannot avoid infringement by changing the form of construction of one or more of the elements or improving it merely, or

by changing the mode and manner or means of putting the elements together unless he changes the mode of operation of the combination as a whole. I do not see that infringement of Harder's combination is avoided by substituting a heavy, cumbersome and two-part brace, the parts hinged together, in place of Harder's simple and effective brace. I cannot see that the defendant avoids infringement by an improved door section, if it be an improvement, or by his substituted means of pressing these door sections into place. The hinge is plainly an equivalent for the bolt and nut where used. The pressure of the door sections into place is by a leverage action of the hinge. It was in the silo art in 1903, and is an improvement in the construction of door sections as applied therein, but was old in analogous arts. See patent to Edward Winslow Gilbert, No. 720,419, dated February 10, 1903, application filed September 13, 1902, for an improvement in silos, which says:

"A special feature of my invention consists in the construction of the doors and the seating of same in the doorposts, while the construction of the crossbraces E form another feature of my invention, as will be more fully described in detail."

Gilbert has a doorpost each side the door opening; that is, a reinforced stave, or thick, heavy stave at each side of the opening. This has a groove to receive the corresponding tongue of the adjacent stave so that the doorposts form a continuation of the silo walls. He has a two-part door section hinged together. He cuts a groove or runway in the face of the doorpost next the opening. He has no rounded portion like defendant's structure, but instead of a groove in the outer ends of the door sections he rounds them outwardly so they fit into the groove or runway in the doorpost. These door sections will run up and down in this groove when the hinge is slightly sprung. These doorposts, answering to the reinforce of Harder, project outwardly and on a line with the outside of the silo walls, and are so cut out as to form a shoulder for the brace. The brace extends from side to side of the door opening, but is located outside. It bends sharply backward at each end to fit the shoulders of the doorpost against which it abuts and presses, holding the walls in position so as to prevent springing and collapse. The brace at such end then turns at a right angle and projects through an opening in the outward extension of the doorpost and is fastened with a nut. The shoulders prevent a springing into the opening and the nut, provided with a suitable washer or plate next the doorpost, prevents movement or springing of the post away from the opening. The hoops, adjustable, encircling the silo, prevent any outward movement of the silo walls or doorposts.

In Hoard's Dairyman of June 26, 1896, we find a circular silo constructed outside the barn but opening into it. This silo was lined and had an opening into the barn extending from sill to plate and was 2½ feet wide. The article says:

"There are ¾ inch rods that cross the doorway at intervals of two feet, passing through the studding on each side of the door and held in place by nuts while the door consists entirely of separate spruce boards, one and one-fourth inches thick by eight inches wide, matched. A projection of an inch

of the lining on one side of the doorway, into which one end of the boards are thrust, with the pressure of the sileage against them, holds them in place. But one board is removed at a time, thus exposing much less silage to the air than when regular short doors are set at intervals."

This does not show or tend to show anticipation of Harder, but rather serves to emphasize the crude condition of the art at that time and the improvement Harder made. I find a statement in Bulletin, No. 40, vol. 3, entitled, "The Silo and Silage in Indiana," issued in June, 1892, by Purdue University Agricultural Experiment Station, as to the door of a silo which shows the then crude ideas on this subject. It reads:

"The door of the silo should be located on the side most convenient for feeding from, and extend from the floor to within two or three feet of the top. A well battened, double icehouse door, made in several sections, not exceeding four feet long each, is most satisfactory. Temporary boards should be fitted in the door casing, flush with the inside edge, to hold back the silage. These boards may be held in place by strips nailed against the casing, and can be removed from time to time as the silo contents are lowered."

In 1903, Farmers' Bulletin, No. 32, "Silos and Silage, Revised Edition," was issued. It is some eight years later than the original edition before quoted from and described, "The Stave Silo and Its Construction." As to the feeding doors this "Revised Edition" says:

"In constructing the silo, when the place is reached where the doors are desired, one stave should be sawed nearly through in the right place for the top and bottom of each door, cutting with the saw a bevel of about 45 degrees. When the construction of the wall is finished, the saw may be inserted at the points where the staves have been partly sawed and the other staves may be sawed through to secure a door of the desired width. The pieces sawed out of the staves should be used in making the doors. Two cleats 2 or 3 inches wide and long enough to reach across the door may be sawed with the proper curvature from 2-inch plank and firmly bolted to the sections of the staves before they are sawed out (Fig. 4). When the silo is filled, two thicknesses of tarred paper should be tacked over the entire inner surface of the wall, including the doors."

Plumb, in 1903, was evidently ignorant of the Harder invention, or he would not have abandoned the continuous door with braces for the single small doors, the one above another with sections of the silo wall between in place of braces. I quite agree with the Circuit Court of Appeals, Third Circuit, Judges Acheson, Gray, and McPherson, Ryder v. Schlichter, 126 Fed. 487, 491, 61 C. C. A. 469, 473, in its construction of claim 4 of the Harder patent. The question was squarely up and commanded thorough consideration. It is evident that the prior art was considered as the court said:

"Harder's invention may not have been of primary importance, but he seems to have been among the first, if not the very first, to make silo building a commercial art, and his structure is an unquestionable improvement in several particulars over all its predecessors. It is entitled to protection, and to a reasonable application of the doctrine of equivalents."

The answer in that case set up over a dozen prior patents and a greater number of alleged prior uses. How many, if any, were in evidence, does not appear.

The question of suitable feeding doors in any silo, particularly the

high ones, which will save labor in taking out the contents at frequent intervals and in small quantities without exposing the remainder to air, is of great importance to users.

Prior to the final decision of the Schlichter Case, November, 1903, the Economy Company, the maker and seller of the defendant's silo, became the owner of the Gilbert patent, before referred to, issued February 10, 1903, and commenced the manufacture and sale of silos in accordance therewith. Complaint was made that this structure infringed the Harder patent, and in that claim the Economy Company acquiesced and paid damages. Thereupon the Economy Company changed the construction of its silo to its present form by substituting for the iron brace of the Gilbert patent, which did not interfere with the movements of the door sections, the heavy cumbersome double piece brace which does. I cannot escape the conviction that it is purposely constructed in its present form for that very purpose, as such construction is unnecessary to the strength of the silo or its proper operation.

Second, the Economy Company instead of cutting out a groove in the back part of the reinforce or timber next the opening fashioned it with a half round at that point and changed the form of the ends of the door section to correspond. As this cumbersome brace, never removed in actual use, fills a few inches of the opening wherever a brace is inserted, it is said that the opening is not "continuous" I take it that a reproduction of the Harder silo made in accordance with his patent except that the brace is extended inwardly so as to interfere with the runway, or up and down movement of the door sections, and the substitution of a hinged door section does not avoid infringement if Harder is entitled to any range of equivalents whatever.

I find nothing in the Van Deusen patent, No. 546,204, dated September 10, 1895, or the Roberts patent, No. 257,762, dated May 9, 1882, that even suggests anticipation of Harder. Van Deusen claimed (claim 2), "The combination with a silo provided with a series of doors arranged one above the other for the removal and insertion of the silage" the reciprocatory piston and rake, neither of which had anything to do with the doors. He shows and describes a series of doors, the one above the other, with an interval of silo wall between, and each door is pivotally connected to a bail journaled in the silo wall acting as a hinge on which the door swings. To fasten them he has a cross-bar pivoted to the door in the center, with staples in the side walls of the silo with which the ends of this swinging bar engage. The moment these doors are opened the silage falls out unless boards are put across on the inside. The efficiency of such 'a door may be doubted but in any event Van Deusen shows nothing like the combination of Harder or like that of the structure, Economy silo, used by defendant.

In Roberts, the walls of the silo are rabbeted (cut out) to receive the ends of planks fitted in as the filling progresses, a strip of some fabric impervious to air first being placed across the opening, rabbets and all. Evidently the pressure of the ensilage is relied on to keep the planks in place. Evidently he was not dealing with a stave silo, and he

is very far from a combination which strengthens the walls next the continuous opening in such a silo and combines therewith means, braces, for keeping the walls in position, preventing collapse, and door sections which may be moved up and down, or removed entirely, at the same time forming reasonably air-tight joints.

[2] It seems plain to me, and the evidence fully sustains the proposition that Harder first came into the field with such a combination, and claimed (claims 1, 2, and 3), first, the specific devices in combination, and, second (in claim 4) the combination generally not limited to the specific things pointed out in the specifications. This last claim, in question here, is not limited in terms to any specific form of brace, or door, or reinforce, and for the court to do so would be rewriting the claim and importing into it limitations not found in the claim itself, and certainly not imposed by any action of the Patent Office or by the prior art. The Circuit Court of Appeals in this circuit has many times held that a rewriting of claims is not permitted. And when an inventor makes an invention and in his specifications points out a specific construction he may claim the specific construction and also have a general broad claim, and when this is done, in order to sustain the broader claim, it is not necessary for the patentee to point out in his patent that the specific construction shown is not essential to the invention. The law gives him ample protection whether he does or not. Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935; Int. T. R. Co. v. Dey et al. (Second Circuit) 142 Fed. 736, 744, 745, 74 C. C. A. 68. 76, 77.

I am satisfied that claim 4 of the Harder patent is valid, and that defendant infringes.

[3] It is contended that the complainants should have gone into Maryland where the Economy Company makes the infringing silos and brought suit there. I do not see much point in this contention. The complainants reside in the Northern district of New York. The record shows several of the infringing silos in use in the Northern district of New York. The law gives the complainants the right to sue these users in the district where both parties reside and test the questions involved. The user may discontinue the use of the silo complained of or contest. He has his election. The maker and seller may assume the defense of its own device which it puts on the market if it would protect that market abroad. Such manufacturer may keep still and allow the use of such product in other districts to be enjoined. The party offended against is not under obligation to go far from home and prosecute the original wrongdoer at the place where the infringing device is made. It seems to me plain that, without incurring the displeasure or reprobation of the courts a person injured in person or property may seek redress in any forum where the law of his country says he may. So far as the payment of tribute by the farmer is concerned it is immaterial whether he pays to the complainants or to the Economy Company as both operate under patents.

There will be a decree for the complainants for an injunction and an accounting, with costs.