RYDER et al. v. BEAVER SILO & BOX MFG. CO.

(District Court, E. D. Wisconsin.  August 14, 1914.)

1. Patents ⬱129—Suit for Infringement—Evidence of Validity—Recognition in Prior Litigation.

Recognition of the validity of a patent by the defendants in a number of suits for its infringement during 14 years of litigation is a sufficient reinforcement of its presumptive validity to justify a court in declining to treat the question as an open one, in view of prior patents.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 182½–186; Dec. Dig. ⬱129.]

2. Patents ⬱328—Validity and Infringement—Silo.

The Harder patent, No. 627,732, claim 4, for a silo having a continuous opening from top to bottom, braces between the edges of the walls forming the opening, door sections for closing the opening, and reinforcing strips for the door sections, covers a combination not shown to have been anticipated by prior publication, nor by prior use, discloses invention, and is entitled to a broad and liberal construction; as so construed, *held* infringed.

In Equity.  Suit by Edgar S. Ryder and others against the Beaver Silo & Box Manufacturing Company.  On final hearing.  Decree for complainants.

Samuel Owen Edmonds, of New York City, and Parkinson & Lane, of Chicago, Ill., for complainants.

John E. Stryker, of St. Paul, Minn., for defendant.

GEIGER, District Judge.  Complainants filed their bill charging defendant with infringement of letters patent No. 627,732, granted to Harder, June 27, 1899, covering an improvement in silos.  The fourth claim of the patent reads:

"In a silo having a continuous opening from top to bottom, braces between the edges of the walls forming the opening, door sections for closing the opening, and reinforcing strips for the door sections, substantially as described."

The defenses are invalidity and noninfringement—the former being based upon the claim of noninvention, anticipation by prior patents, and prior use; whereas, the defense of noninfringement upon the limitation, generally, of the patent structure to the precise form and language of the claim.

[1] The patent has been before the courts in Ryder v. Schlicter (C. C.) 121 Fed. 98; Id., 126 Fed. 487, 61 C. C. A. 469 (C. C. A. 3d Cir.); Ryder v. Townsend (C. C.) 188 Fed. 792; Ryder v. Lacey (D. C.) 200 Fed. 966; and while these cases dealt with the interpretation of claim 4 here involved, its validity seems to have been either conceded or *not disputed*.  Its validity, in view of the prior art patents, is not here seriously challenged; and after 14 years of litigation whose result assumed validity, after exhaustive recognition and acknowledgment by licenses and the trade, the court can now well dispose of this phase of the case by according to the patent's presumptive validity the additional support of such recognition, and declining to treat as open the question of validity in view of prior patents, or the question of utility.

[2] The elements of the claim in contest are:

(1) A continuous opening from top to bottom.

(2) Braces between the edges of the walls forming the opening.

(3) Door sections for closing the opening.

(4) Reinforcing strips for the door sections.

Respecting validity, the principal contention here has been that the patented structure was fully disclosed in and anticipated by publications in 1894 and 1897, in Hoard's Dairyman, and in silos constructed by Harlan and Trescott at Churchville, Md., and Livonia, N. Y., respectively, in the summer of 1898.

The silo disclosed in Hoard's Dairyman, July 6, 1894, is structurally unlike that of the patent, and, indeed, unlike the ordinary modern silo, in that it is not a stave silo, but built upon the plan of a round, frame house—a frame of uprights is erected, and then to inclose it sheathing is applied—and the idea of staves or hoops, the barrel or tank form of structure, is not suggested. The latter, of course, presents the necessity, in order to meet the stresses and strains peculiar to that type, of having a special form of opening. The only elements of the claim in contest which can be said to read upon the structure are the "continuous opening" and braces; the latter consisting, according to the descriptive article published, of iron rods, while the published diagram or drawing refers to them as gas pipe placed across the openings at 2½-foot spaces. No suggestion of their function is possible, except that they prevent a spreading of the doorway's sides. The idea that rods were to be inclosed in gas pipe, the former to prevent spreading, and the latter, by abutting the sides, collapsing, has no warrant either in the drawing or the accompanying descriptive article. In my judgment, the structure, upon critical examination, discloses an opening whose tendency to spread is met by cross bolts or rods, and nothing more is found or intended. Such opening was to be closed by allowing boards to rest against its inner sides after the ordinary fashion of closing a grain or coal bin. The elements of the claim in contest here are not present, for the sufficient reason that the structure is so fundamentally different as neither to suggest nor require their presence.

The structure disclosed in Hoard's Dairyman, March 26, 1897, is eliminated, as not containing the "continuous opening." It suggests nothing more than the cylindrical stave structure, in which, after its erection, the door openings are cut out. No continuous opening with braces, reinforced from top to bottom, to be closed by various door "sections," is embodied.

Coming to the question of prior invention or prior use as found in the Harlan structure, the facts are these: Harder's application for a patent was filed February 4, 1899. He was engaged in the manufacture of silo machinery at Cobleskill, N. Y., and the building of silos. He commenced the exploitation of his patent structure some time prior to 1900. He died shortly after, and hence his testimony upon the direct question whether he first conceived the invention, and, if so, when, is not available on this issue. The two questions presented in this connection are whether the Harlan structure em-

bodies the Harder conception and combination, and whether, if it does, Harlan did not get his idea, or some considerable assistance, from Harder. It appears that in the summer of 1898 Harlan, who was a farmer at Churchville, Md., built a stave silo. The important differences between it and the modern silo—of complainant's type—are, first, that a considerable portion thereof was built underground, having masonry walls; secondly, that while it had a "continuous opening" above the ground level, which was closed with sectional doors, the feature of reinforcing the opening, if present at all, was supplied, not by "reinforcing" means, but arose incidentally in using the edge staves—which were smaller, 4-inch, instead of 6, turned radial to the silo—as the door wall. The patent structure calls for a separate reinforcement as an element, and while the Harlan idea of turning the stave, as indicated, may have been hit upon as a means of forming the walls of the opening, the fact that they were initially weaker than the rest of the staves, and, after being turned to 90°, were to be notched, perforated, and mortised to receive the door-securing strips, the hoops, and tenon, as shown in the proofs, quite conclusively precludes the presence of a "reinforcing" function to be performed, as in a combination like the patent structure. At all events, the marked difference in the two structures, the one being partly above and partly below the ground level, while the patent structure is all above ground, and therefore has a "continuous opening" for the *whole* silo, and the further fact that the "reinforcing" idea is not present in the former—these two aspects of the Harlan structure of themselves make it impossible to say beyond reasonable doubt that it anticipated the structure of the patent.

But if this were not so, if it be conceded that the Harlan silo structurally anticipated the Harder, the question is suggested, upon the proofs, whether Harlan did not get his idea, or some assistance, from Harder. When an alleged prior user and a patentee are shown to have sustained some relation to each other respecting the subject-matter of invention, the charge that the latter borrowed from the former may readily advance to the larger inquiry whether either borrowed from the other. Now, as above stated, Harder was a manufacturer of silo machinery, a builder of silos. As such, it is fair to presume he knew the art, and was interested in its development and progress. Harlan probably knew this, for on May 17, 1898, he wrote Harder for prices on hoops and lugs, presumably for use on the silo then contemplated. A reply was sent by Harder May 23, 1898. On May 27, 1898, Harlan wrote to the Williams Manufacturing Company, a manufacturer of tanks and water supply goods, asking for quotations upon the same and other articles, to which he received reply dated May 30th. As a matter of fact, he bought from the latter, and not from Harder, having ordered the goods July 11, and received and paid for them August 31, 1898. By reference to account books, and vouchers evidencing payments for labor and materials, he establishes the building of the silo, and its completion at about September 15th of that year. But Harder and Harlan met at some time prior to this date. Upon this subject, the latter, against complainant's objection,

testified that in the month of July or the early part of August (1898)
he received a letter (not produced or found) from Harder, saying
that the latter was going to Baltimore and would like to see Harlan
"about silos"; that Harlan replied, saying he would be glad to see
him "to talk silos, but did not expect to change his (my) plans, as I
had already made considerable progress toward building his (my) silo."
Thereupon the two met and "had a long talk about silos and silo
construction."

At the time of this meeting, Harlan says he thinks all of his ma-
terial for building was on hand and "probably part of the foundation
built"; that his plans had been fully made for four or five months,
and included "a new and original idea for using a continuous succes-
sion of doors, built of straight material, instead of the usual curved
doors, which so far as I knew was the only kind that had been used
up to that time." He testified further:

"Q. State whether or not, directly or indirectly, you received any informa-
tion or suggestion from Mr. Harder which was embodied in the silo as you
built it. A. I certainly did not. All the information which was communi-
cated was communicated by me to Mr. Harder, for I explained to him my
new idea of a continuous succession of doors, and he seemed much interested
in it."

The testimony, assuming its competency, is obviously not only gen-
eral, but apparently given upon the assumption that Harder's inven-
tion relates to the continuous opening or successive doors. But, al-
though the proofs fail to show Harlan's structure to anticipate Har-
der's, the testimony above referred to clearly assumed such anticipa-
tion, and was aimed to show communication by Harlan to Harder.
Corroboration was suggested in the witness' statement that one Lee
was present during the "whole interview," his presence being prompted
by Harlan because he (Lee) "was much interested in silos at that time,
he having built or about to build several," wherefore, said Harlan, "I
invited him to meet Mr. Harder with me, thinking Mr. Harder might
interest him in his silo." Lee, however, was unable to fix the time
of the interview other than in the year 1898, referring to the occasion
as one when Harder wanted to sell him a silo. "I contemplated build-
ing one, and talked over the question." Lee afterward built a stone
silo, completing it September 1, 1898. Although present at the whole
interview, he answered, when asked whether he knew that Harlan
"had designed a new form of silo": "I am not sure. It has been
14 years ago." Then, in response to suggestive questions, he an-
swered that Harlan "stated that his silo was to contain continuous
doors"; but, when asked whether Harder said anything about the
form of silos manufactured by him (Harder), he answered, "No, he
did not."

It may not be permissible to assume that Harder, who filed his ap-
plication for a patent in February, 1899, had his invention fully in
mind in the summer or spring of 1898, when this interview took
place. This much is true: The witnesses have not disclosed all that
transpired between Harder and Harlan. The insistence by Harlan
and Lee that Harder, who came expressly to interest them in silos,
did not in the slightest degree seek to promote his own interests, nor

to accomplish the object of his visit, that he said nothing about the kind of silo *he* was building, that he should play the part of a pupil eager to learn, is contrary to all reasonable probabilities; and this alone, if the structures were conceded to be duplicates, may well suggest a doubt respecting anticipation which can be said to rest in reason, and not upon conjecture or suspicion. I do not mean that the inference of disclosure by Harder to Harlan is thereby justified. But Harder's testimony is not now obtainable, and Harlan's version of the interview was offered by the defense as proof, not only of prior use, but Harder's knowledge thereof, and, if it is competent at all, cannot be accepted if it is inherently infirm, or unless supported by other corroborating facts and circumstances presumably within his power to produce. The defense of prior use by Harlan has not been established to the requisite degree of certainty.

The Livonia silos, alleged to anticipate, are no longer in existence. The testimony tends to establish their erection in 1898. Of course, witnesses, unaided by the presence of the physical structure, can at best give only such aid, after 15 years, as recollection of generalities can give. And herein is found the infirmity of the proof in this branch of the defense. Drawings and models are exhibited to witnesses, who almost inevitably testify to a recollection of the alleged anticipating structure, which conforms with the drawings or model. If the model or drawing produced be one originally made and used as a guide to construction of the alleged anticipating structure, its probative force may be great. But when, as here, after many years, it is prepared under the stress of an adverse interest seeking to sustain an issue of identity, the presence and certainty of the patent drawings and structure are very apt to prove potent aids, sensibly or insensibly, in the preparation of the model or drawing of the alleged anticipating structure which is no longer existent; and likewise recollections, otherwise utterly infirm, are not only stimulated, but naturally assume some creative power, through whose exercise resemblances are found and greatly exaggerated, while radical differences, which in fact existed, are either minimized or totally eliminated. If the conception, by Harder, of the idea of a continuous opening in the silo, were the only question, then the testimony respecting the Harlan and Livonia silos might have the requisite probative force. But complainants can concede that that idea may not have been original with him, and still prevail in the contention that the combination structure of the patent is the first wherein the element of the continuous opening in combination with the other elements disclosed novelty, and, for the first time in the silo art, great practical utility. Upon such latter issue, involving the combination of the various elements, the proof, in my judgment, fails.

The remaining question—infringement—must be answered in favor of the complainants, unless defendant's contention for a limited interpretation of the claim in controversy be upheld. In other words, it is conceded that, if the claim be interpreted as urged by complainants, defendant's structure infringes. An examination of the cases, supra, involving this patent, shows that they all presented this precise

question. In Ryder v. Schlicter (C. C.) 121 Fed. 98, defendant's contention for a narrow construction was sustained, but upon appeal (126 Fed. 487, 61 C. C. A. 469) the ruling was reversed, and it was held that a broad and liberal interpretation must be given to the claim. The other cases gave it a like interpretation. The question was sharply litigated and exhaustively discussed, and their conclusions upholding the broad interpretation of the claim are here adopted.

A decree for the complainants may be entered.